IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mark Cox, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Time Warner Cable, Inc., <br><br> Defendant. | Case No.: 3:12-cv-03333-JFA <br><br> **COMPLAINT** <br> (Class Action) <br> (Jury Trial Demanded) |

The Plaintiff, on behalf of himself and all others similarly situated, complaining of the Defendant herein, would respectfully show unto the Court as follows:

**PARTIES**

1. Plaintiff Mark Cox is a citizen and resident of Richland County, South Carolina.

2. Defendant Time Warner Cable, Inc. ("TWC") is a corporation existing pursuant to the laws of the State of New York having its principal place of business in New York, New York.

**JURISDICTION AND VENUE**

3. This court has jurisdiction under 28 U.S.C. §1332 as complete diversity exists between the Plaintiff and the Defendant.

4. Venue is proper in United States District Court for the District of South Carolina, Columbia Division pursuant to Local Civil Rule 3.01(A)(1) as one or more of the corporate defendants to this suit do business relating to the events of this suit in the Columbia Division.

1

## CLASS ALLEGATIONS

5.      Plaintiff asserts the allegations raised herein on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class of persons similarly situated.  The class is defined as follows:

> All persons and businesses under a contract for internet service with TWC, for which the terms of the contractual agreement include a "price lock guarantee" from TWC.

6.      The size of the class is so numerous that joinder of all members of the Plaintiff class is impractical.

7.      Plaintiff Cox has no interest antagonistic to or in conflict with the interests of the class.  Plaintiff's attorneys are experienced lawyers that have litigated class action lawsuits involving similar issues.

8.      There exist questions of law and fact common to Plaintiff Cox and to all members of the Plaintiff Class that predominate over any individual questions of law and/or fact. Among the questions of law and fact common to Plaintiff Cox and the class he represents are:

> Whether Defendant TWC has breached its contracts with class members by adding a $3.95 charge to their monthly bills for "leasing" the necessary internet modem.

9.      Plaintiff Cox's claims are typical of the claims of the members of the proposed class in that Plaintiff and all class members seek declaratory and injunctive relief pertaining to the contracts executed between themselves and Defendant TWC. Plaintiff Cox's claims are further typical of the claims of the members of the proposed class in that he seeks contractual damages against TWC as a result of TWC's breach of contract as described herein.

10.     Class action treatment of the matters at issue in this controversy is superior to the alternatives, if any, for the fair and efficient adjudication of such issues, because such treatment

will permit a larger number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would entail. Class action treatment in this case will have the added virtue of permitting the adjudication of what may be relatively small claims by certain members of the proposed class, for whom it would otherwise not be financially feasible to litigate their claims as individual actions against the Defendants.

11.     Plaintiff Cox is aware of no difficulty in the management of this action that would preclude it from being maintained as a class action.

## **FACTUAL BASIS COMMON TO ALL CLASS MEMBERS**

12.     From at least 2010 and continuing to the present, Defendant TWC marketed and sold a high-speed internet (much of which was sold as a "package" with cable television) with a "price lock guarantee" to customers. Under this contractual agreement, customers agreed to purchase high-speed internet from TWC on a monthly basis for a specified time period (typically either one or two years) and at a specified price.  TWC agreed to provide high-speed internet to these customers and that the specified price would not increase during the contract period.  In what TWC commonly called a "price lock guarantee plan" or simply the "price lock guarantee," TWC promised not to raise the price of high-speed internet in exchange for the customers' agreement to purchase high-speed internet from TWC for a specific number of months.

13.     In order to provide its customers with the ability to use its high-speed internet, TWC had to provide its customers with an internet modem, which the customer connected to coaxial cable running to the house or business.

14.     At the time when TWC and its customers entered into the "price lock guarantee" contract for high-speed internet, the understanding between the parties was that TWC would

provide each customer with a properly operating modem, which was necessary and for the customer to use the coaxial-cable-based high-speed internet that TWC provided.

15. On or about November 1, 2012, TWC began charging high-speed internet customers a monthly fee of $3.95 to "lease" the internet modem that was needed in order to receive TWC's high-speed internet. Alternatively, price-lock customers could purchase an internet modem similar to the one that TWC had previously agreed to provide during the contract period.

16. Charging for use of the modem (or otherwise refusing to provide such a device) is a violation to the contractual terms of the agreement made between TWC and its customers who are in a "price lock guarantee" contract.

## FACTS SPECIFIC TO PLAINTIFF MARK COX

17. Plaintiff Mark Cox entered into a contract with Defendant TWC on or about November 1, 2011 for high-speed internet (which was bundled with cable television).

18. Under this contractual agreement, Plaintiff Cox agreed to purchase high-speed internet from TWC, on a monthly basis, until November 29, 2013 at a specified price. TWC agreed to provide high-speed internet to Plaintiff Cox for this time period and that the specified price would not increase during this contract period. In what TWC commonly called a "price lock guarantee plan" or simply the "price lock guarantee," TWC promised not to raise the price of the high-speed internet in exchange for Plaintiff Cox's promise to purchase high-speed internet from TWC for the specified number of months.

19. In order to provide Plaintiff Cox with the ability to use its high-speed internet, TWC had to provide Cox with an internet modem.

20. At the time when TWC and Plaintiff entered into the "price lock guarantee" contract for high-speed internet, the understanding between the parties was that TWC would provide Plaintiff Cox with a properly operating modem, which was necessary and for Plaintiff Cox to use the coaxial-cable-based high-speed internet that TWC provided.

21. On or about November 1, 2012, TWC began charging Plaintiff Cox $3.95 to "lease" the internet modem needed to receive TWC's high-speed internet.  Alternatively, Plaintiff Cox could purchase an internet modem similar to the one that TWC had previously agreed to provide during the contract period.

22. Charging for use of the modem (or otherwise refusing to provide such a device) is a violation to the contractual terms of the agreement made between TWC and Plaintiff Cox.

## FOR A FIRST CAUSE OF ACTION:
*DECLARATORY JUDGMENT*

23. The Plaintiff incorporates the allegations contained in the paragraphs above as if fully restated herein.

24. This cause of action seeks a declaratory judgment for the purposes of determining questions of actual controversy between the parties.

25. Plaintiff Cox, on behalf of himself and all others similarly situated, seeks a determination of rights and legal relationship with Defendant TWC.

26. The issues raised by the disputes over this contract are of such wide concern and public interest that this declaratory judgment action should be decided for future guidance to ensure that the public is protected.

27. Plaintiff Cox, on behalf of himself and all others similarly situated, seeks a determination of the following question:

> Whether it is a violation of contractual agreement between TWC and its "price lock guarantee" customers for TWC to refuse to provide those customers with an internet modem as part of their agreed-upon monthly rate and, thereafter, require these customers to either pay to lease the modem from TWC or to purchase their own modem.

28. Plaintiff Cox, on behalf of himself and all others similarly situated, prays for a declaratory judgment that:

> By the terms of TWC contractual agreement with its "price lock guarantee" customers, TWC is bound to continue providing, without charge or fee, an internet modem to all such customers for the duration of their "price lock guarantee" contract.

### FOR A SECOND CAUSE OF ACTION:
*INJUNCTIVE RELIEF*

29. Plaintiff incorporates the allegations contained in paragraphs one through twenty-eight as if fully restated herein.

30. Plaintiff Cox, on behalf of himself and all others similarly situated, prays for this Court to issue a permanent injunction, enjoining Defendant from:

> Refusing to provide a properly operating internet modem, without additional fees or charges, to any high-speed internet customer who is currently in a "price lock guarantee" contract and who entered into the contract prior to November 1, 2012.

### FOR A THIRD CAUSE OF ACTION:
*BREACH OF CONTRACT*

31. The Plaintiff incorporates the allegations contained in paragraphs one through thirty as if fully restated herein.

32. Plaintiff Cox and each member of the Plaintiff Class entered into a binding contract, supported by valuable consideration, with Defendant TWC.

33. Defendant TWC breached this contract by refusing to provide a properly operating internet modem, without additional fees or charges, to any high-speed internet

6

customer who is currently in a "price lock guarantee" contract and who entered into the contract prior to November 1, 2012.

34.    As a direct and proximate result of Defendant TWC's breaches of contract, the Plaintiff and the Plaintiff Class have suffered monetary damages. Thus the Plaintiff and the Plaintiff Class are entitled to damages in an amount sufficient to compensate them for their loss.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon these allegations, the Plaintiff and the Plaintiff Class pray for an Order for the following:

1. Certification of a class of plaintiffs;

2. A Declaratory Judgment finding that by the terms of TWC contractual agreement with its "price lock guarantee" customers, TWC is bound to continue providing, without charge or fee, an internet modem to all such customers for the duration of their "price lock guarantee" contract;

3. An injunction enjoining Defendant TWC from refusing to provide a properly operating internet modem, without additional fees or charges, to any high-speed internet customer who is currently in a "price lock guarantee" contract and who entered into the contract prior to November 1, 2012;

4. Compensatory damages against Defendant TWC in an amount sufficient to compensate Plaintiff Cox and the Plaintiff Class;

5. Interest on the loss suffered by Plaintiff Cox and the Plaintiff Class;

6. Interest consistent with the terms of the policies or, if no interest rate be contained within the policy, consistent with the provisions of applicable law;

7. All costs recoverable under common law, rule and/or statue; and

8. Any other relief that the Court deems proper.

Respectfully Submitted,

s/ Francis M. Hinson, IV
Francis M. Hinson, IV (Fed. ID #9997)
bhinson@myadvocates.com
Kenneth M. Suggs (Fed. ID #3422)
ksuggs@myadvocates.com
Gerald D. Jowers, Jr. (Fed. ID #8025)
gjowers@myadvocates.com
JANET, JENNER & SUGGS, LLC
500 Taylor Street, Suite 301
Columbia, South Carolina 29201
Tel: 803-726-0050
Fax: 803-727-1059

November 20, 2012             ATTORNEYS FOR THE PLAINTIFF
Columbia, South Carolina      AND THE PLAINTIFF CLASS

8