IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Mark T. Cox, and Riddick S. Richardson, on behalf of themselves and all others similarly situated, | ) ) ) ) | Civil Action No. 3:12-cv-03333-JFA |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **AMENDED COMPLAINT** (Class Action) (Jury Trial Demanded) |
| Time Warner Cable, Inc., | ) ) | |
| Defendant. | ) ) | |

The Plaintiffs, on behalf of themselves and all others similarly situated, complaining of the Defendant herein, would respectfully show unto the Court as follows:

**PARTIES**

1. Plaintiffs Mark T. Cox and Riddick S. Richardson are citizens and residents of Richland County, South Carolina.

2. Defendant Time Warner Cable, Inc. ("TWC") is a corporation, organized in the State of Delaware and has its headquarters and principal place of business is in New York, New York.

3. Defendant TWC operates cable television, digital telephone, and high-speed internet systems throughout the United States, including the County of Richland, State of South Carolina.

4. TWC has salespersons, telesales representatives, and customer service representatives and their supervisors working in call centers in many states, which includes, but is not limited to, South Carolina and New York.

1

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §1332 as complete diversity exists between Plaintiffs Cox and Richardson and Defendant TWC.

6. This Court has jurisdiction over the subject matter of this action pursuant to 26 U.S.C. § 1332.

7. Defendant TWC is subject to personal jurisdiction in South Carolina pursuant to S.C. Code § 36-2-803(1) because it regularly transacts business in this State, solicits business in this State, derives substantial revenue from services rendered in this State, and the causes of action arise, at least in part, from such conduct in this state.

8. Defendant TWC resides, for the purpose of diversity jurisdiction, in a state other than South Carolina; and the Complaint alleges a "class action" in which the amount in controversy exceeds $5,000,000.00.

9. Venue is proper in United States District Court for the District of South Carolina, Columbia Division pursuant to Local Civil Rule 3.01(A)(1) as TWC does business relating to the events of this suit in the Columbia Division.

## CLASS ALLEGATIONS

10. Plaintiffs Cox and Richardson assert the allegations raised herein on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representatives of a class of persons similarly situated. The class is defined as follows:

> All persons and businesses, located in any state within the United States, under a contract for internet service with TWC, for which the terms of the agreement include a "price-lock guarantee" from TWC.

11. The size of the class is so numerous that joinder of all members of the Plaintiff class is impractical.

12. Plaintiffs Cox and Richardson have no interest antagonistic to or in conflict with the interests of the class. Plaintiffs' attorneys are experienced lawyers that have litigated class action lawsuits involving similar issues.

13. There exist questions of law and fact common to the Plaintiffs Cox and Richardson and to all members of the Plaintiff Class that predominate over any individual questions of law and/or fact. Among the questions of law and fact common to Plaintiffs Cox and Richardson and the class they represents are:

> Whether Defendant TWC has breached its contracts with class members by adding a $3.95 charge to their monthly bills for "leasing" the indispensible and necessary internet modem.

14. The claims of Plaintiffs Cox and Richardson are typical of the claims of the members of the proposed class in that Plaintiffs and all class members seek declaratory and injunctive relief pertaining to the contracts executed between themselves and Defendant TWC. The claims of Plaintiffs Cox and Richardson are further typical of the claims of the members of the proposed class in that they seek contractual damages against TWC as a result of TWC's breach of contract as described herein.

15. Class action treatment of the matters at issue in this controversy is superior to the alternatives, if any, for the fair and efficient adjudication of such issues, because such treatment will permit a larger number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would entail. Class action treatment in this case will have the added virtue of permitting the adjudication of what may be relatively small claims by certain members of the proposed class, for whom it would otherwise not be financially feasible to litigate their claims as individual actions against the Defendants.

16.     Plaintiffs Cox and Richardson are aware of no difficulty in the management of this action that would preclude it from being maintained as a class action.

## **FACTUAL BASIS COMMON TO ALL CLASS MEMBERS**

17.     From at least November 1, 2010, and continuing until at least September 30, 2012, Defendant TWC marketed and sold a high-speed internet (much of which was sold as a "package" with cable television and/or telephone service) with a "price-lock guarantee" to customers. Under this contractual agreement, customers agreed to purchase high-speed internet from TWC a specified price per month.  TWC agreed to provide high-speed internet to these customers and that the specified price would not increase during an agreed upon time period.  In what TWC commonly called a "price-lock guarantee plan" or simply the "price-lock guarantee," customers agreed to purchase high-speed internet connectivity from TWC in exchange for TWC's promise to both provide high-speed internet connectivity to the customer and to not raise the agreed-upon price for the agreed-upon time period.

18.     In order to provide its customers with the high-speed internet connectivity, TWC had to provide its customers with an internet modem, which the customer connected to a coaxial cable running to his/her home or business.  A properly operating internet modem was necessary for the customer to use the coaxial-cable-based high-speed internet that TWC provided.

19.     At the time when TWC and its customers entered into the "price-lock guarantee" contract for high-speed internet, the understanding between the parties was that TWC would provide each customer with a properly-operating internet modem.  Stated differently, TWC promised to provide both a high-speed internet signal and a properly-operating internet modem (which is necessary in order to utilize the high-speed internet signal) in exchange for the customer's promise to pay the agreed-up monthly rate.

20. Prior to November 1, 2012, TWC's provision of a properly-operating internet modem to the customer was included as part of TWC's contractual obligation to price-lock customers. No additional charges or fees, beyond the agreed-upon "price-lock" monthly rate, were to be assessed to the customer for TWC's provision of a properly-operating internet modem.

21. In or around November 2012, TWC began charging its high-speed internet customers, including its price-lock customers, a monthly fee of $3.95 to "lease" the internet modem needed in order to receive TWC's high-speed internet. Alternatively, customers would have to purchase an internet modem similar to the one that TWC had previously agreed to provide during the "price-lock" contract period.

22. Charging for use of the modem (or otherwise refusing to provide such a device) is a violation to the contractual terms of the agreement made between TWC and its customers who entered into a "price-lock guarantee" contract prior to November 2012.

23. TWC's monthly "lease" fee for the internet modem is a disguised rate-hike on price-lock customers that is a violation of the contractual terms of the agreement TWC made with its price-lock customers.

## FACTS SPECIFIC TO PLAINTIFFS COX AND RICHARDSON

24. Plaintiff Cox entered into a contract with Defendant TWC in or around November 2011 for high-speed internet (which was bundled with cable television).

25. Under this contractual agreement, Plaintiff Cox agreed to purchase high-speed internet from TWC on a monthly basis for specific price. TWC agreed to provide high-speed internet connectivity to Plaintiff Cox and that the agreed-upon price would not increase until November or later. In what TWC commonly called a "price-lock guarantee plan" or simply the

5

"price-lock guarantee," TWC promised not to raise the price of the high-speed internet in exchange for Plaintiff Cox's promise to purchase high-speed internet from TWC.

26. Plaintiff Richardson entered into a contract with Defendant TWC in or around July 2012 for high-speed internet (which was bundled with cable television).

27. Under this contractual agreement, Plaintiff Richardson agreed to purchase high-speed internet from TWC on a monthly basis for specific price. TWC agreed to provide high-speed internet connectivity to Plaintiff Richardson and that the agreed-upon price would not increase until July 2014 or later. In what TWC commonly called a "price-lock guarantee plan" or simply the "price-lock guarantee," TWC promised not to raise the price of the high-speed internet in exchange for Plaintiff Richardson's promise to purchase high-speed internet from TWC.

28. In order to provide Plaintiffs Cox and Richardson with the ability to use its high-speed internet, TWC had to provide both Cox and Richardson with an internet modem.

29. At the time when TWC and Plaintiffs entered into the "price-lock guarantee" contract for high-speed internet, the understanding between the parties was that TWC would provide Plaintiffs Cox and Richardson with a properly operating modem, which was necessary and for Plaintiffs Cox and Richardson to use the coaxial-cable-based high-speed internet that TWC provided.

30. On or about November 1, 2012, TWC began charging Plaintiffs Cox and Richardson (and all other price-locked customers in the United States) $3.95 to "lease" the internet modem needed to receive TWC's high-speed internet. Alternatively, Plaintiffs Cox and Richardson could purchase an internet modem similar to the one that TWC had previously agreed to provide during the contract period.

31.     Charging for use of the modem (or otherwise refusing to provide such a device) is a violation to the contractual terms of the agreements TWC made between Plaintiffs Cox and Richardson and all other price-lock customers.

## FOR A FIRST CAUSE OF ACTION:
*DECLARATORY JUDGMENT*

32.     Plaintiffs incorporate the allegations contained in the paragraphs above as if fully restated herein.

33.     This cause of action seeks a declaratory judgment for the purposes of determining questions of actual controversy between the parties.

34.     Plaintiffs Cox and Richardson, on behalf of themselves and all others similarly situated, seek a determination of rights and legal relationship with Defendant TWC.

35.     The issues raised by the disputes over this contract are of such wide concern and public interest that this declaratory judgment action should be decided for future guidance to ensure that the public is protected.

36.     Plaintiffs Cox and Richardson, on behalf of themselves and all others similarly situated, seek a determination of the following question:

> Is it a violation of contractual agreement between TWC and its "price-lock guarantee" customers for TWC to refuse to provide those customers with an internet modem, without additional charges or fees, in exchange for the customers' payment of the agreed-upon monthly rate for high-speed internet?

37.     Plaintiffs Cox and Richardson, on behalf of themselves and all others similarly situated, pray for a declaratory judgment that:

> By the terms of TWC contractual agreement with its "price-lock guarantee" customers, TWC is bound to continue providing, without charge or fee, an internet modem to all such customers for the duration of their "price-lock guarantee" contract.

7

## FOR A SECOND CAUSE OF ACTION:
*INJUNCTIVE RELIEF*

38.     Plaintiffs incorporate the allegations contained in paragraphs one through thirty-seven as if fully restated herein.

39.     Plaintiffs Cox and Richardson, on behalf of themselves and all others similarly situated, pray for this Court to issue a permanent injunction, enjoining Defendant from:

> Refusing to provide a properly operating internet modem, without additional fees and/or charges, to any high-speed internet customer who is currently in a "price-lock guarantee" contract and who entered into the contract prior to November 1, 2012.

## FOR A THIRD CAUSE OF ACTION:
*BREACH OF CONTRACT*

40.     Plaintiffs incorporate the allegations contained in paragraphs one through thirty-nine as if fully restated herein.

41.     Plaintiffs Cox and Richardson and each member of the Plaintiff Class entered into a binding contract, supported by valuable consideration, with Defendant TWC.

42.     Defendant TWC breached this contract by refusing to provide a properly operating internet modem, without additional fees or charges, to any high-speed internet customer who is currently in a "price-lock guarantee" contract and who entered into the contract prior to November 1, 2012.

43.     As a direct and proximate result of Defendant TWC's breaches of contract, the Plaintiffs and the Plaintiff Class have suffered monetary damages. Thus the Plaintiffs and the Plaintiff Class are entitled to damages in an amount sufficient to compensate them for their loss.

**PRAYER FOR RELIEF**

**WHEREFORE**, based upon these allegations, the Plaintiffs and the Plaintiff Class pray for an Order for the following:

1. Certification of a class of plaintiffs;

2. A Declaratory Judgment finding that by the terms of TWC contractual agreement with its "price-lock guarantee" customers, TWC is bound to continue providing, without charge or fee, an internet modem to all such customers for the duration of their "price-lock guarantee" contract;

3. An injunction enjoining Defendant TWC from refusing to provide a properly operating internet modem, without additional fees or charges, to any high-speed internet customer who is currently in a "price-lock guarantee" contract and who entered into the contract prior to November 1, 2012;

4. Compensatory damages against Defendant TWC in an amount sufficient to compensate Plaintiffs Cox and Richardson and the Plaintiff Class;

5. Interest on the loss suffered by Plaintiffs Cox and Richardson and the Plaintiff Class;

6. Interest consistent with the terms of the policies or, if no interest rate be contained within the policy, consistent with the provisions of applicable law;

7. All costs recoverable under common law, rule and/or statue; and

8. Any other relief that the Court deems proper.

Respectfully Submitted,

s/Francis M. Hinson, IV
Francis M. Hinson, IV (Fed. ID #9997)
bhinson@myadvocates.com
Kenneth M. Suggs (Fed. ID #3422)
ksuggs@myadvocates.com
Gerald D. Jowers, Jr. (Fed. ID #8025)

9

gjowers@myadvocates.com
JANET, JENNER & SUGGS, LLC
500 Taylor Street, Suite 301
Columbia, South Carolina 29201
Tel: 803-726-0050
Fax: 803-727-1059

**ATTORNEYS FOR THE PLAINTIFFS
AND THE PLAINTIFF CLASS**

December 17, 2012
Columbia, South Carolina

10