IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| MARK T. COX AND RIDDICK S. RICHARDSON, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>- against -<br><br>TIME WARNER CABLE INC.,<br><br>*Defendant*. | Civil Action No.: 3:12-cv-03333-JFA |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT AND
COMPEL ARBITRATION**

Defendant Time Warner Cable Inc. submits this memorandum and the accompanying Affidavit of Christine Dzujna in support of its Motion To Dismiss the Complaint in favor of mandatory arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

NATURE OF THE CASE

In their Second Amended Complaint (the "Complaint"), Plaintiffs Mark T. Cox and Riddick S. Richardson claim that Time Warner Cable ("TWC") breached contractual agreements with them by instituting an equipment lease fee for the modem TWC provides to customers to access the internet. When issue is joined in an appropriate forum, TWC will demonstrate that Plaintiffs' breach of contract claim is without force. However, it is respectfully submitted that this Court is not a forum available to the Plaintiffs. This dispute is subject to a mandatory arbitration provision contained in the subscriber agreement which governs TWC's relationship with subscribers. Plaintiffs agreed to be bound by that agreement and based their contract claim upon its application and enforcement. TWC submits this motion to enforce those arbitration agreements and to dismiss the Complaint.

STATEMENT OF FACTS

The Complaint alleges that each Plaintiff entered into a contract with TWC, called a "Residential Services Subscription Agreement" ("Subscriber Agreement"), under which they were entitled to receive, and did receive, TWC cable and internet services. (Entry 15, ¶¶ 24-27). They allege that the price for those services increased after TWC initiated and charged a new "modem lease fee" effective November 1, 2012. (*Id.* at ¶¶ 30-31). Plaintiffs claim that the imposition of this fee constitutes a breach of the Subscriber Agreement for which they seek money damages (Third Cause of Action); they also append surplus requests for a declaration of breach (First Cause of Action) and an injunction (Second Cause of Action) to their contract claim.

Conspicuously absent from Plaintiffs' Complaint is any mention of the binding mandatory arbitration provision contained in the Subscriber Agreement. On the very first page of the Subscriber Agreement is a legend in bold, capitalized letters alerting subscribers:

> **THIS AGREEMENT CONTAINS A BINDING "ARBITRATION CLAUSE," WHICH SAYS THAT YOU AND TWC AGREE TO RESOLVE CERTAIN DISPUTES THROUGH ARBITRATION. YOU HAVE THE RIGHT TO OPT OUT OF THIS PART OF THE AGREEMENT, SEE SECTION 15.**

*See Dzujna Affidavit, Exhibit A*. The arbitration provision itself is found at Section 15 and states:

> Our goal is to resolve Disputes fairly and quickly. However, if we cannot resolve a Dispute with you, then, except as described elsewhere in Section 15, each of us agrees to submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution. As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it.

*Id.* at § 15(a). The Subscriber Agreement defines "Dispute" to mean "any dispute, claim or controversy between you and TWC regarding any aspect of your relationship with us." Section 15 also contains a class-waiver provision (*Id.* at § 15(b)) and states:

> Only claims for money damages may be submitted to arbitration; claims for injunctive orders or similar relief must be brought in a court. You may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement. *The arbitrator will decide whether a dispute can be arbitrated.*

*(Id.* (emphasis added)). Under the Subscriber Agreement, TWC will advance each subscriber arbitration filing fees as well as the subscriber's portion of the costs associated with the arbitration. *Id.* at § 15(d).

Plaintiffs Cox and Richardson each consented to the terms of the Subscriber Agreement, including specifically this arbitration provision. Richardson first became a TWC subscriber in 2007, subject to the terms of a prior version of the Subscriber Agreement. *See Dzujna Affidavit,* ¶ 5 & *Exhibit B* at pp. 19-33. Among other things, the Subscriber Agreement in force in 2007 permitted TWC to amend the Subscriber Agreement upon notice and provided that the subscriber's continued acceptance of Time Warner Cable services would constitute acceptance of such an amendment. *See Dzujna Affidavit*, ¶ 6 & *Exhibit B* §§ (1)(b)-(d). TWC amended its Subscriber Agreement in 2010 to include the arbitration provision in the form that exists in the current Subscriber Agreement (*See Dzujna Affidavit*, ¶ 7), and sent notices to every TWC subscriber included in their monthly statements. *See Dzujna Affidavit*, *Exhibit C*. Plaintiff Richardson remained a TWC subscriber after that amendment and was a subscriber to TWC services as of the filing of this action. (Entry 15, ¶ 27; *Dzujna Affidavit* ¶ 8).

Plaintiff Cox first became a TWC subscriber in 2011, after the Subscriber Agreement had been amended to contain the current form of arbitration provision. *See, Dzujna Affidavit* ¶ 13.

When a TWC service representative performs work for a subscriber at their place of residence, the subscriber signs a "Work Order" acknowledging their receipt of the most recent version of the Subscriber Agreement and consenting to its terms, specifically the arbitration agreement. *See Dzujna Affidavit*, ¶ 9. On March 7, 2011, Plaintiff Richardson (or his designee) executed a work order stating:

> My signature on this work order and consent to subscriber agreement indicates that I have received and agreed to be bound by Time Warner Cable's Residential Services Subscriber Agreement, provided to me by Time Warner Cable at the time of installation . . . . I understand and acknowledge that the Time Warner Cable Residential Services Subscriber Agreement provides that the parties agree to resolve certain disputes relating to that Agreement through arbitration. I acknowledge that I have the right to opt out of these arbitration provisions for 30

3

> days from the date they first applied to me and that, if I do not do so, I am giving up various rights include the right to a trial by jury.

*See Dzujna Affidavit*, *Exhibit D*. Plaintiff Cox signed Work Orders containing nearly identical language twice—on May 7, 2012, and October 26, 2012—which stated:

> I understand and acknowledge that the [Subscriber] Agreement provides that the parties agree to resolve certain disputes relating to the Agreement through Arbitration. I further acknowledge that I am aware I have the right to opt out of these arbitration provisions for 30 days from the date they first applied to me and that, if I do not do so, I am giving up various rights including the right to a trial by jury.

*Id.*, *Exhibits F-G*. Consistent with these notices, the Subscriber Agreement permits subscribers to opt out of the agreement to arbitrate if the subscriber "notif[ies] TWC in writing within 30 days of the date that you first became subject to this arbitration provision." *Id.*, *Exhibit A* § 15(e). According to TWC's business records, neither Cox nor Richardson submitted an opt-out notice to TWC. *See Dzujna Affidavit*, ¶ 17.

## ARGUMENT

Section 2 of the FAA provides that a written agreement to arbitrate "in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has made clear, this section constitutes "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *see also AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1745 (2011).

Under the FAA, courts must enforce an arbitration agreement where the movant demonstrates: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the non-movant to arbitrate the dispute. *Adkins* v. *Labor Ready, Inc.*, 303

4

F.3d 496, 500-01 (4th Cir. 2002). Section 3 of the FAA authorizes a court to stay any litigation if these criteria are met, *see id.* at 500, but the Court of Appeals has made clear that dismissal of an action is warranted where every claim asserted is subject to arbitration, *see Choice Hotels v. BSR Tropicana Resort*, 252 F.3d 707, 709-710 (4th Cir. 2001).

The express language of the TWC Subscriber Agreement plainly mandates arbitration in this action. Indeed, several federal courts in other jurisdictions have recently dismissed lawsuits filed against TWC based on enforcement of the agreement to arbitrate contained within TWC's Subscriber Agreements. *See, e.g.*, *Masters* v. *Time Warner Cable*, No. A-12-CA-451-SS, 2012 WL 6965400 (W.D. Tex. Dec. 13, 2012); *J&J Sports* v. *Mandell Family Ventures*, No. 3:10-cv-02489-BF, 2012 WL 4512497 (N.D.Tex. Oct. 2, 2012); *Williams* v. *Time Warner Cable*, No. 1:11-cv-00647-SSB (S.D.Oh. Mar. 12, 2012); *Bar-Ayal* v. *Time Warner Cable*, No. 03-cv-9905-KMW, 2006 WL 2990032, (S.D.N.Y. Oct. 16, 2006).

The recent decision in *Masters* v. *Time Warner Cable* is particularly instructive. There, the plaintiff challenged certain TWC business practices which he claimed to constitute violations of state and federal law. *See* 2012 WL 6965400 at *1-2. He was subject to the same Subscriber Agreement and arbitration provision to which Plaintiffs are subject here. The court concluded that the Subscriber Agreement was enforceable and dismissed the action pursuant to the arbitration provision. Id. at *3-4. It is respectfully submitted that this Court should do the same.

A.      **There is a Binding Agreement To Arbitrate This Dispute.**

There can be little doubt that Plaintiffs agreed to be bound by the terms in the Subscriber Agreement, including the arbitration provisions contained therein. It is sufficient in this regard that Plaintiffs have affirmatively embraced the Subscriber Agreement by making it the basis of their only substantive claim for relief. Plaintiffs can hardly seek to recover under an agreement and, simultaneously, selectively seek to avoid enforcement of certain express terms of that Agreement. In any event, the Dzujna Affidavit makes clear that both Plaintiffs expressly agreed

5

to be bound by the Subscriber Agreement and, specifically, consented to the arbitration provisions contained therein. *See Dzujna Affidavit*, *Exhibits. D, F-G*.

There can be equally little doubt that the instant dispute is subject to arbitration. The Subscriber Agreement's arbitration provision applies broadly to "any dispute, claim or controversy between you and TWC regarding any aspect of your relationship with us." Plaintiffs' challenge to an equipment fee charged by TWC in connection with the provision of its services clearly falls within the scope of this provision. In any event, if there is a question (and we submit there is not) as to the arbitrability of Plaintiffs' claims, that issue should be resolved by the arbitrators under the Subscriber Agreement's clear and unmistakable terms. *Id., Exhibit A* § 15(d).[1] *See Peabody Holding Co., LLC v. United Mine Workers of America*, 665 F.3d 96, 102 (4th Cir. 2012) (directing arbitration of questions of scope of arbitration where parties "clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate" (quotation omitted)).

Plaintiffs' request for an injunction does not alter this result for several reasons. *First*, Plaintiffs' request for an injunction should be disregarded as a bald attempt to avoid the arbitration provisions in the Subscriber Agreement. Plaintiffs do not allege that the legal remedies they seek are somehow inadequate as would warrant issuance of the requested injunction. *See generally Legend Night Club* v. *Miller*, 637 F.3d 291, 297 (4th Cir. 2011). The request for injunctive relief should be dismissed for this reason alone. *See, e.g.*, *Montague* v. *Dixie Natural Life Insurance Co.*, 3:09-CV-687-JFA, 2011 WL 2294146, at *23 (D.S.C. June 8, 2011) (dismissing injunction request where plaintiff had adequate legal remedies through breach of contract claim).

*Second*, it is blackletter law that an injunction is a remedy, not a claim. *See, e.g.*, *Monsanto Co.* v. *Geertson Seed Farms*, 130 S. Ct. 2743, 2756 (2010) (injunction is remedy for violation of legal right). The fact that Plaintiffs have sought a particular (and facially unavailable)

---

[1] The Subscriber Agreement states: "The arbitrator will decide whether a dispute can be arbitrated."

6

*remedy* does nothing to change the fact that the only substantive *claim* they assert—for breach of contract—is subject to arbitration under the Subscriber Agreement.

*Third*, even if Plaintiffs' injunction request was a separate "claim" that had any alleged basis in the Complaint, the Subscriber Agreement bars precisely what Plaintiffs now attempt to achieve. That Agreement states that a subscriber "may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement" and provides that any request "for injunctive orders or similar relief must be brought in a court." *See Dzujna Affidavit, Exhibit A* § 15(b). Thus, Plaintiffs' own agreement bars their current attempt to merge an equitable claim not subject to arbitration with a breach of contract claim that clearly is subject to arbitration.

## B.    The Remaining Elements Are Satisfied.

By the simple act of filing their Complaint, Plaintiffs have established the first and fourth elements above, *i.e.*, that there exists a dispute between the parties that has not been submitted to arbitration. Likewise, the transaction evidenced by the Subscriber Agreement—the provision of TWC's internet and cable services—is clearly one involving interstate commerce. TWC is a Delaware corporation with its principal place of business in New York and which provides its services on a national basis (Entry 15, ¶¶ 2-3); Plaintiffs are South Carolina residents who purport to sue on behalf of a nation-wide class of consumers who receive TWC services. (*Id.* ¶¶ 1, 10). If this were not itself sufficient, the Federal Communications Commission, the Supreme Court and the Court of Appeals have each acknowledged that cable and internet services such as those offered by TWC affect interstate commerce.[2]

---

[2]     *In the Matter of Inquiry Concerning High-Speed Access to the Internet over Cable and Other Facilities*, FCC 02-77 ¶ 59, 17 FCC Rcd. 4798, 4832 (Mar. 15, 2002); *National Cable & Telecommunications Ass'n* v. *Brand X Internet Services*, 545 U.S. 967, 976 (2005); *PSInet* v. *Chapman*, 362 F.2d 227, 240-241 (4th Cir. 2004).

## C.   Remedy.

The only substantive claim advanced by Plaintiffs is for breach of contract in relation to charges imposed by TWC in connection with the provision of services.  That claim is subject to arbitration and, consistent with the regular practice in this district, the entire Complaint should be dismissed.  *See, e.g.*, *St. Denis* v. *OneMain Financial, Inc.*, 8:12-CV-01669-TMC, 2012 WL 6061022, at *3 (D.S.C. Dec. 6, 2012); *Fleetwood Transportation Corp.* v. *Packaging Corp. of America*, 6:10-CV-01219, 2012 WL 761737, at *5 (D.S.C. Mar. 8, 2012); *St. Andrews Townhomes Homeowners' Ass'n, Inc.* v. *Beazer Homes USA, Inc.*, 4:09-CV-00382, 2010 WL 985385, at *2 (D.S.C. Mar. 12, 2010).

CONCLUSION

The Complaint should be dismissed or, in the alternative, this action should be stayed pending the arbitration of Plaintiffs' claims.

Dated this 19<u>th</u>  day of <u>February</u>, 2013.

ROBINSON, MCFADDEN & MOORE, P.C.


<u>s/ Frank R. Ellerbe, III</u>
Frank R. Ellerbe, III [699]
Bonnie D. Shealy [6744]
Post Office Box 944
Columbia, SC  29202
Telephone:  (803) 779-8900
Fax:  (803) 252-0724
fellerbe@robinsonlaw.com
bshealy@robinsonlaw.com

*Attorneys for Time Warner Cable Inc.*


CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000 (telephone)
(212) 269-5420 (facsimile)

*Of Counsel for Time Warner Cable Inc.*