# ATTACHMENT 3

*Masters v. Time Warner Cable, Inc.*

2012 WL 6965400
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas,
Austin Division.

Douglas MASTERS, Individually and on Behalf of All Others Similarly Situated, Plaintiff,
v.
TIME WARNER CABLE, INC., Defendant.

No. A–12–CA–451–SS. | Dec. 13, 2012.

**Synopsis**
**Background:** Customer brought putative class action against Internet service provider, alleging that provider violated federal and Texas law by making harassing calls to his cellular telephone to collect a debt from another customer who was unknown to him. Provider moved to dismiss or stay and to compel arbitration, and to stay discovery. Customer moved to join additional defendant and to compel.

**Holdings:** The District Court, Sam Sparks, J., held that:

[1] valid, enforceable arbitration agreement existed between customer and provider;

[2] determining scope of arbitration agreement was for arbitrator; and

[3] dismissal, rather than stay, was warranted.

Ordered accordingly.

**Attorneys and Law Firms**

James L. Davidson, Michael L. Greenwald, Greenwald Davidson PLLC, Boca Raton, FL, Dennis Robert Kurz, Weisberg & Meyers, LLC, Houston, TX, for Plaintiff.

Elizabeth S. Chestney, Cornell Smith & Mierl, LLP, Austin, TX, John P. Mittelbach, Wargo & French LLP, Los Angeles, CA, Michael S. French, Michael Wolak, III, Paul G. Sherman, Wargo & French LLP, Atlanta, GA, for Defendant.

**Opinion**

***ORDER***

SAM SPARKS, District Judge.

**\*1** BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Time Warner Cable, Inc.'s Motion to Dismiss or Stay and Compel Arbitration [# 28], Plaintiff Douglas Masters's Response [# 33] thereto, and Time Warner's Reply [# 39]; Time Warner's Partial Motion to Dismiss [# 29], Masters's Response [# 8] thereto, and Time Warner's Reply [# 40]; Time Warner's Motion to Stay Discovery [# 30], Masters's Response [# 34]

Masters v. Time Warner Cable, Inc., --- F.Supp.2d ---- (2012)

---

thereto, and Time Warner's Reply [# 41]; Masters's Motion to Join Additional Defendant [# 43], Time Warner's Response [# 44] thereto, and Masters's Reply [# 47]; and Masters's Motion to Compel [# 48], Time Warner's Response [# 49] thereto, and Masters's Reply [# 50].[1] Having considered the documents, the file as a whole, and the governing law, the Court now enters the following opinion and orders, resolving all pending motions.

## Background

This is an aspiring class action, alleging Time Warner has violated (1) the federal Telephone Consumer Protection Act (TCPA), (2) 47 U.S.C. § 227 (restrictions on use of telephone equipment), and (3) section 392.302(4) of the Texas Financial Code (prohibited debt collection methods).

Plaintiff Masters is a customer of some Time Warner entity, though the parties dispute whether the entity is Defendant Time Warner Cable, Inc., or an affiliate. When Masters became a Time Warner customer in October 2009, he signed a Work Order, authorizing installation of high speed internet services. Incorporated by reference in the Work Order were the usual sort of terms and conditions companies include in such contracts of adhesion. Unsurprisingly, an arbitration clause was included. The service agreement further provided Time Warner can unilaterally change the terms, and Time Warner did so in 2010. At least one of these changes included revisions to the arbitration agreement. Time Warner asserts Masters had the opportunity to opt out of this particular revision, and notice of the change was provided with his monthly statement for May 2010, with instructions on how to opt out within thirty days. Time Warner asserts Masters never opted out. Masters denies receiving the update and opt-out notice. In any event, he continues to be a Time Warner customer, and there is no dispute there has been an arbitration agreement of some kind at all times between Masters, and whichever Time Warner entity he is in privity with.

On October 27, 2011, Masters allegedly received a call from Time Warner to his cellular phone, in which the caller asked to speak to one Tessie Jubin[2] regarding a delinquent account. Masters claims he never provided Time Warner with his cell phone number, and represents he has no idea who Tessie Jubin is. There is no suggestion in the record that Masters himself was delinquent. Although Masters advised Time Warner it had the wrong number, and asked for the calls to cease, Time Warner allegedly began calling Masters's cell phone repeatedly beginning in January 2012, leaving recorded messages for Tessie Jubin on Masters's voicemail. Masters's complaint enumerates some twenty-one such calls placed between January and April 2012. Several calls allegedly occurred on the same day, and a few are asserted to have been made after business hours. Masters resorted to changing his voicemail message to state: "You have reached the voicemail for Doug Masters.... If you are calling for Tessie, or anyone else, you have the wrong number. Please do not call here ever again. Thank you." Pl.'s Am. Compl. [# 21] ¶ 38. Apparently, this was to no avail, and the calls continued.

**\*2** Masters filed suit on May 21, 2012, claiming Time Warner is violating federal and Texas laws designed to protect consumers from harassing telephone calls and debt collection efforts. Presently, Time Warner seeks to have the case dismissed or stayed by virtue of the arbitration agreement, which required arbitration before the American Arbitration Association. Also pending are assorted other motions, which the Court will address after ruling on whether this case can proceed in federal court.

## Discussion

**I. Motion to Dismiss or Stay Pending Arbitration**

**A. Legal Standard**

[1] [2] [3] The starting point of the Court's analysis is the Federal Arbitration Act (FAA). 9 U.S.C. §§ 1–16. The FAA applies to an action as long as the contract containing the arbitration agreement "evidenc[es] a transaction involving commerce" among the several states. *See id.* §§ 1–2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning

the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir.2002). Thus, the FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

**[4]** The Fifth Circuit employs a two-step analysis to determine whether the parties agreed to arbitrate a dispute. *Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 381 (5th Cir.2008) (citations omitted). First, a court must ask if the parties agreed to arbitrate the dispute. *Id.* This first step consists in turn of two threshold inquiries: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of the agreement. *Fleetwood Enters. ., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002).

**[5] [6] [7]** With respect to the first threshold inquiry, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). If a court answers the first question in the affirmative, however, the second inquiry is made in light of the established federal and state policies favoring arbitration; consequently "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem 7 Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi,* 473 U.S. at 626.

**\*3** **[8]** The rule is different, however, when the question is whether the parties have agreed to arbitrate the question of arbitrability itself: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi.,* 514 U.S. at 944 (quoting *AT & T Techs. v. Commc'ns Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The typical presumption is reversed in this situation because "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," and the law recognizes "[a] party often might not focus upon [the question of who should decide arbitrability] or upon the significance of having arbitrators decide the scope of their own powers." *Id.* at 945.

**[9] [10] [11]** If the two threshold criteria are met (there is a valid arbitration agreement, and the dispute is within its scope), the court turns to the second step, and must determine if "any federal statute or policy renders the claims nonarbitrable." *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992) (internal citations omitted). In other words, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi,* 473 U .S. at 628. The burden lies with the party attempting to avoid arbitration "to show that Congress intended to preclude a waiver of a judicial forum" for the party's claims. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**[12]** Finally, whether to compel arbitration can be answered before a court considers whether to certify a class. Accordingly, when one party successfully invokes a valid arbitration agreement, whether to subsequently allow a class proceeding is generally a question for the arbitrator, not the court. *See Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.,* 343 F.3d 355, 359–60 (5th Cir.2003).

**B. Application**

**1. Valid, Enforceable Agreement**

**[13]** Masters contests whether an enforceable arbitration agreement exists between himself and Time Warner Cable, Inc. However, there is no dispute he remains a Time Warner customer, regardless of whether the local service provider is Time Warner Cable, Inc., and he continues to accept services from Time Warner. Masters asserts Time Warner Cable, Inc. was not a party to the original Work Order, but even accepting this contention as true, it is immaterial. By continuing to accept services, he became bound by the present Residential Services Subscriber Agreement. Def.'s Mot. to Dism. [# 28–1], Ex. 1C, at 11 ("By signing your Work Order or *using our Services,* you accept (in other words, make legally binding) these Customer Agreements.") (emphasis added). In turn, the current Agreement includes a designation of Time Warner Cable, Inc. as a party to the contract. *Id.* ¶ 16(o) (" 'TWC' means Time Warner Cable Inc. and the local TWC-affiliated cable operators that

provide our Services, or any cable operator to whom we assign this Agreement."). Masters argues the Agreement is not properly authenticated, but Time Warner attached an affidavit from Ed Tagg, its Senior Director of Technical Operations for Time Warner's Central Texas operation, affirming Masters is a current customer, Masters was informed of the changes via his May 2010 statement, and the current version of the Agreement is available online at all times. *Id.* Ex. 1, ¶¶ 3, 7–8. Accordingly, this argument fails. Masters raises no challenge otherwise to the validity or enforceability of the agreement, and the Court therefore finds a valid arbitration agreement exists between the parties.

### 2. Scope of the Agreement

**\*4** [14] Turning the part two of the threshold inquiry, Masters disputes whether he has clearly agreed to assign the question of scope to the arbitrator. However, the Residential Services Subscriber Agreement states, "The arbitrator will decide whether a dispute can be arbitrated." *Id.* ¶ 15(b). This is a clear statement of intent to assign the scope determination to the arbitrator. *See Agere Systems, Inc. v. Samsung Elec. Co.,* 560 F.3d 337, 340 (5th Cir.2009) (holding similar language "explicitly confer[ed] upon an arbitrator" the role of determining whether the dispute was subject to the arbitration agreement). The Court further finds, given that Masters is a Time Warner customer, Time Warner's assertion of arbitrability is not "wholly groundless," and therefore is properly a decision for the arbitrator.[3] *See id.* at 340–41.

### 3. Arbitration is Not Contrary to Public Policy

Finally, Masters points to no law or public policy which would preclude arbitration of this dispute. Accordingly, the Court finds this case must be arbitrated according to the terms of the Residential Services Subscriber Agreement.

### 4. Dismiss or Stay

[15] The Court finds this case should be dismissed, rather than stayed. Although the FAA generally mandates a stay, *see* 9 U.S.C. § 3, the Fifth Circuit has explained, "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992). Here, although Masters invokes three different statutes, all cover similar and related subject matter: debt collection efforts, and harassing commercial phone calls. There is only one sequence of facts at issue: the series of calls to Masters's cell phone. All of Masters's claims must be submitted to arbitration, for the reasons given above. Accordingly, the Court GRANTS the Motion to Dismiss [# 28]. Because this case is dismissed, all other pending motions are hereby DISMISSED AS MOOT.

### Conclusion

Accordingly,

IT IS ORDERED that Defendant Time Warner Cable, Inc.'s Motion for Extension of Time to Reply [# 38] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Defendant Time Warner Cable, Inc.'s Motion to Dismiss or Stay and Compel Arbitration [# 28] is GRANTED;

IT IS FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE;

IT IS FINALLY ORDERED that all other pending motions are DISMISSED AS MOOT.

[1]    Also still technically pending is Time Warner's Motion for Extension of Time to Reply [# 38] regarding the motion to dismiss or compel arbitration, and Time Warner's Notice of Withdrawal [# 42] of same. As Time Warner has withdrawn the motion, it is DISMISSED AS MOOT.

3:12-cv-03333-JFA    Date Filed 02/19/13    Entry Number 19-10    Page 6 of 6

**Masters v. Time Warner Cable, Inc., --- F.Supp.2d ---- (2012)**

[2]    Or Juban, according to Time Warner.

[3]    Masters argues this case is not susceptible to arbitration because he has requested injunctive relief from further debt-collection calls, and the Agreement excludes injunctive relief from the arbitration provision. However, Time Warner argues, and the Court agrees, Masters's request for injunctive relief is now moot, because Time Warner has presented evidence it deleted Masters's cell phone number from Tessie Jubin's account, and Masters does not claim to have received any further calls. *See* Def.'s Reply [# 39–2], Ex. 3, ¶ 3.

End of Document    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.    5