# ATTACHMENT 5

*Williams v. Time Warner Cable*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

John Williams,                        )
                                      )
                Plaintiff,            )  Case No. 1:11-CV-647
                                      )
        vs.                           )
                                      )
Time Warner Cable, Inc.,              )
<u>et al.</u>,                        )
                                      )
                                      )
                Defendants.           )

<u>O R D E R</u>

        This matter is before the Court on a motion to compel

arbitration and dismiss the complaint, or in the alternative, to

stay the case (Doc. No. 14), filed by Defendant Time Warner

Cable, Inc.  For the reasons that follow, Defendant's motion to

compel arbitration is well-taken and is **GRANTED.**

        The facts of this case, as recounted in the complaint,

may be briefly summarized.  Plaintiff John Williams subscribed

for cable television services from Defendant Time Warner Cable,

Inc. ("TWC").  In March 2008, Plaintiff enrolled in TWC's "Price

Lock Guarantee" Program, under which his monthly fee for a

bundled package of services supposedly would not increase for a

period of two years.  Amended Complaint (Doc. No. 9) ¶¶ 11-15.

The "Price Lock Guarantee" was memorialized in a signed

agreement.  <u>Id.</u> ¶ 15.  Plaintiff claims, however, that TWC

breached the "Price Lock Guarantee" agreement by raising his

monthly fee by $5.00 in March 2009, which was only in the

thirteenth month of the twenty-four month price commitment period.  Id.

The basic subscription agreement between Plaintiff and TWC has an arbitration clause - the validity of which is not otherwise in dispute - in which the parties agreed to submit disputes arising out of the agreement with each other to binding arbitration.  Doc. No. 14-3, at 17-18.  Subsequent versions of the subscription agreement added a provision for the subscriber to opt out of the arbitration clause "within 30 days of the date you first became subject to the arbitration provision."  Doc. No. 14-5, at 10.

In December 2011, Plaintiff filed an amended complaint against TWC asserting claims on behalf of himself and a potential class of all other participants in the "Price Lock Guarantee" Program whose monthly fee was increased in the thirteenth month of the twenty-four month price commitment period.  The amended complaint alleges state law claims for breach of contract, promissory estoppel, unjust enrichment, and fraud.  The subject matter jurisdiction of the Court is predicated on 28 U.S.C. § 1332(d)(2)(A) because most of the members of the proposed class are from states different from TWC and the aggregate amount of the claims exceeds $5,000,000.

TWC now moves to compel arbitration and dismiss the case, or alternatively, to stay the case, based on the

arbitration clause in the subscription agreement.  Plaintiff, however, contends that he opted out of the arbitration clause by sending timely notice to TWC.  TWC points out, however, that Plaintiff did not attempt to opt out of the arbitration clause until September 2011.  TWC contends that Plaintiff's opt out is invalid because he did not give notice within 30 days of becoming subject to the arbitration clause, which, according to TWC, occurred on March 29, 2010.  According to TWC, therefore, Plaintiff gave notice of his intent to opt out of the arbitration clause too late.  Plaintiff responds that he did not become "subject to" the arbitration clause until there was a concrete and unresolvable dispute between the parties.  Plaintiff contends, therefore, that he did not become "subject to" the arbitration clause until 2011 and that, consequently, his opt out was timely.  Thus, Plaintiff contends that his dispute with TWC cannot be submitted to arbitration.

The Federal Arbitration Act ("FAA") controls whether this case will proceed to arbitration.  In <u>Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.</u>, 350 F.3d 568 (6th Cir. 2003), the Court discussed the procedure to follow when presented with a motion to compel arbitration:

> The FAA provides that arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. If a court determines that a claim is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

When faced with a motion to compel arbitration, a district court must follow the procedure set forth in section 4 of the FAA:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. 9 U.S.C. § 4.

It is well established that any doubts regarding arbitrability must be resolved in favor of arbitration We review a district court's ruling on a motion to compel arbitration de novo.

Id. at 573 (internal citations omitted).

This case will be ordered to arbitration. As TWC accurately points out in its reply brief, the parties' subscription agreement specifically provides that "[t]he arbitrator will decide whether a dispute can be arbitrated." Doc. No. 14-5. Thus, although Plaintiff argues that he validly opted out of the arbitration clause, the parties have also agreed to submit the question of arbitrability to the arbitrator. In such a case, the arbitrator, and not the trial court, decides whether the dispute falls within the scope of the arbitration clause. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995). Moreover, "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T

4

Tech, Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (internal brackets omitted).  Here, TWC has offered an entirely plausible construction of the applicability of the arbitration clause and the opt out provision, i.e., that Plaintiff became subject to the arbitration clause when the subscription agreement was first amended and not when the dispute between Plaintiff and TWC over the "Price Lock Guarantee" Program first arose.   Accordingly, it is clear to the Court that the entire dispute, including the interpretation and scope of the arbitration clause, must be submitted to the arbitrator.  Id.; 9 U.S.C. § 3.

Accordingly, TWC's motion to compel arbitration is well-taken and is **GRANTED.**  This case is **STAYED** and the parties are **ORDERED** to proceed with arbitration in accordance with the agreements at issue.

**IT IS SO ORDERED.**

Date March 12, 2012                s/Sandra S. Beckwith
                                   Sandra S. Beckwith
                          Senior United States District Judge

5