IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Mark T. Cox and Riddick S. Richardson, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | 3:12-cv-03333-JFA |
| vs. | ) ) ) | CIVIL ACTION NO. 4:12-cv-03333-JFA-- |
| Time Warner Cable, Inc., | ) ) | |
| Defendant. | ) ) | |
| Fred W. Elmore, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 4:12-cv-03407-JFA |
| Time Warner Cable, Inc., | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

Plaintiffs in the above-captioned matters hereby submit this response to Defendant Time Warner Cable's (hereinafter "TWC") Motion to Dismiss and Compel Arbitration.

**FACTS**

Plaintiffs do not have any substantial disagreements with TWC regarding the material allegations set forth in its motion and memorandum. Both the Cox and Richardson plaintiffs, as well as Elmore, contend TWC breached its contract with them regarding pricing for certain services and/or equipment. All three plaintiffs seek monetary relief as well as injunctive and/or declaratory relief on behalf of themselves and all others similarly situated. There are some

1

distinctions between the respective plaintiffs' claims and their class definitions at this time, but those distinctions are not material to the issue presently before the Court.

TWC contends all Plaintiffs are required to submit their disputes to arbitration pursuant to Paragraph 15 of the company's Subscriber Agreement. For the following reasons, Plaintiffs disagree and submit TWC's motion should be denied.

## ARGUMENT

I.     **TWC's arbitration clause is unenforceable because it is illusory.**

The arbitration provision at issue can be found in Paragraph 15 of TWC's Subscriber Agreement. (D.E. #19-3, pp. 10-11). In Paragraph 8 of the Subscriber Agreement, TWC maintains and retains the right to unilaterally amend or alter the Subscriber Agreement at any time, including prices:

> 8. We May Change our Customer Agreements
>
> (a) We may change our Customer Agreements by amending the on-line version of the relevant document. Unless you have entered into an Addendum that ensures a fixed price for a period of time (for instance, a Price Lock Guarantee Addendum), we may also change the prices for our services or the manner in which we charge for them.
>
> (b) If you continue to use the Services following any change in our Customer Agreements, prices or other policies, you will have accepted the change (in other words, made them legally binding). If you do not agree to the changes, you will need to contact your local TWC office to cancel your Services.
>
> (c) Any changes to our Customer Agreements are intended to be prospective only. In other words, the amended version of the relevant document only becomes binding on you as of the date that we make the change.

(D.E. #19-3, pp. 6-7).

This fact was confirmed by Christine Dzujna, TWC's Senior Director of Compliance and Legal Affairs, whom TWC presented as its witness for a deposition taken under Rule 30(b)(6) of FRCP. Specifically, Ms. Dzujna testified in her deposition as follows:

> Q. Would it be accurate to state that Time Warner has the right to amend this at any time, to make any revisions it wants to?
>
> A. We do state that, yes, in the subscriber agreement.
>
> Q. And in fact, Time Warner has, in the past, amended it from time to time, haven't they?
>
> A. Correct.

(Dzujna Depo., p. 20).

TWC maintains that the company can, at its own whim and discretion, change the terms of its arbitration agreement by simply posting a change on its webpage and that, by continuing to receive whatever TWC services he or she has agreed to purchase (i.e. cable television, high-speed internet, or digital telephone), the customer will be considered to have consented to the amendment TWC has made.

Thus, if TWC, posted a change to the arbitration agreement on its website and, at the same moment in which the change was posted, one of its customers was in the middle of watching a television program, simply by continuing to watch the show (and while in all practicality having absolutely no notice of the change in the terms), the customer would be considered by TWC to have consented to the change in the terms of the arbitration agreement. At her deposition, Ms. Dzujna specifically testified to this matter as well:

> Q. The way I read the agreement in Paragraph 8b if there is a change – if Time Warner makes a change to the subscriber agreement, the only thing that the customer would have to do to acknowledge the agreement is to continue receiving services?
>
> A. Yes, that is my understanding.

(Dzujna Depo., pp. 20-21).

When the drafting party retains the right to unilaterally amend or alter its arbitration agreement at any time, such agreements have routinely been found to be illusory and

3

unenforceable by many courts, including the Fourth Circuit Court of Appeals. In <u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 939, the Fourth Circuit first held that an employer's right to change the terms of an arbitration agreement in whole or in part without notice rendered the agreement unenforceable. Less than ninety (90) days ago, in <u>Noohi v. Toll Bros., Inc.</u>, 708 F.3d 599 (2013), the Fourth Circuit reaffirmed this legal principle when it affirmed a district court opinion that found an arbitration provision to be unenforceable because it was illusory and lacked mutuality of consideration under Maryland law. The Maryland District Court, relying upon the case of <u>Cheek v. United Healthcare of Mid Atlantic, Inc.</u>, 835 A.2d 656 (Md. 2003), found that Toll Brothers' arbitration agreement, which provided it unfettered discretion to change or amend it at any time, rendered its promise to arbitrate illusory.

TWC argues that its retention of the right to unilaterally amend the Subscriber Agreement at any time in any fashion or form does not make it illusory because the Agreement specifically states any amendments or changes shall be prospective only. This does not, however, change the illusory nature of the promise. Once a customer signs or enters into the Subscriber Agreement, TWC can effectively revoke its promise to arbitrate at any time thereafter, regardless of when or how the particular dispute with the customer arose. This was the exact point made the Fourth Circuit in <u>Toll Brothers</u>. 708 F.3d at 608, 611.

The same conclusion was reached by the Fifth Circuit Court of Appeals in <u>Carey v. 24 Hour Fitness, USA, Inc.</u>, 669 F.3d 202 (5th Circuit 2012). In <u>Carey</u>, the Fifth Circuit invalidated an arbitration provision as illusory under Texas law where the contract at issue also permitted the arbitration agreement to be unilaterally amended at any time and in any manner by the drafting party. The Fifth Circuit stated that "where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement

to avoid arbitration, then the agreement was illusory from the outset." 669 F.3d at 205. Several other courts have also held as such. See also, <u>Douglas v. Johnson Real Estate Investors, LLC</u>, 470 Fed.Appx. 823, 826 (11th Cir. 2012) (finding, under Massachusetts law, that employee's signed arbitration agreement was unenforceable because employer retained ability to unilaterally alter the terms); <u>Dumas v. American Golf Corp</u>., 299 F.3d 1216, 1219 (10th Cir. 2002) ("[A]n arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or scope is illusory); <u>Canales v. University of Phoenix</u>, 854 F.Supp.2d 119, 124 (D.Me. 2012).

Thus, because TWC has retained the unfettered right to, at any time, unilaterally change, modify, alter or amend its Subscriber Agreement without notice, it has effectively not bound itself at all and its arbitration agreement is illusory and should be determined by the Court to be unenforceable.

## II.     **TWC's Arbitration Provision is unenforceable because it lacks mutual consideration.**

In <u>Noohi</u>, the Fourth Circuit also found that Toll Brothers' arbitration provision was unsupported by consideration. The Court determined that under Maryland law, as articulated in <u>Cheek</u>, an arbitration provision must be supported by consideration independent of the contract underlying it, namely mutual obligation. 708 F.3d at 607-09. Therefore, the question before the Court is whether South Carolina law also requires independent consideration, i.e., mutual obligation, to be found within the arbitration provision or underlying the agreement as a whole. While Plaintiffs cannot find any South Carolina reported decision directly on point, they would suggest that South Carolina would follow Maryland law and require independent consideration within the arbitration provision itself. While it appears no South Carolina appellate court has ruled on whether an arbitration provision requires separate consideration, the South Carolina

5

Supreme Court has so held in very similar circumstances. Specifically, the South Carolina Supreme Court held that when a covenant not to compete is entered into after the inception of employment, separate consideration, in addition to continued at-will employment, is necessary in order for the covenant to be enforceable. Poole v. Incentives Unlimited, Inc., 345 S.C. 378, 382, 548 S.E.2d 207, 209 (2001). Plaintiffs submit that the South Carolina Supreme Court would, if presented with the issue, require separate consideration to support an arbitration agreement rather than the general consideration underlying the overall contract.

Even without such a requirement, however, this arbitration agreement must fail due to lack of consideration. There is one particular undisputed fact in this case which evidences the lack of mutual obligations between the parties and supports Plaintiffs' argument of lack of consideration. Customers, such as the Plaintiffs, are completely bound to utilize or seek relief through arbitration, regardless of the type of dispute they may have. However, TWC admits it uses or otherwise resorts to the judicial process and dispute resolution mechanisms outside of arbitration. Just one such instance is debt collection. When TWC has a dispute with a customer regarding an amount owed to the company, even in situations where TWC and the customer are in disagreement as to the amount owed, the company does not compel arbitration with its customer but resorts to termination of the customer's services and then employs the use of third-party collection agencies and obtains judgments against customers outside of the arbitration process. This undisputed fact was again admitted by TWC through Christine Dzujna in TWC's 30(b)(6) deposition:

> Q. I'd like to talk to you about if a customer does not pay their bill, or becomes delinquent, I'm assuming that – I know that the agreement gives Time Warner the right to terminate the service, to cut their service off if they don't pay their bill; is that correct?

> A. I think what I can say is that I know our subscriber agreement provides that we can terminate for any reason.
>
> Q. What other steps – what then, will Time Warner do if they do not receive payment from a customer?
>
> A. I'm not involved in those decisions about terminating customers, so I can't speak to the steps that lead up to that.
>
> Q. Do you know after a service is terminated, if a customer still refuses to pay the bill, do you know what steps Time Warner may take then to collect their money?
>
> A. Again, I'm not specifically, directly, involved in that. I know we have collection agencies that help to try to collect that debt.
>
> Q. Time Warner – these are companies – outside companies that Time Warner contracts with to collect the debt?
>
> A. I don't know, specifically. We may have in-house collection personnel, but we also probably contract outside. I just don't know specifically.
>
> Q. Would you agree with me, then, that Time Warner, on occasion, uses a means other than arbitration to resolve a dispute with a customer?
>
> A. **Yes, I would say that we use other means to try to resolve disputes**.

(Dzujna Depo., pp. 38-40) (emphasis added).

Thus, TWC has admitted a lack of mutual obligation to arbitrate all of its disputes with customers. Rather, only the customers such as Plaintiffs have an unfettered obligation to arbitrate all disputes of any kind and nature with TWC. Such a lack of mutual obligations with regard to disputes cannot possibly constitute sufficient consideration to support an arbitration agreement, as the Fourth Circuit has clearly held in Noohi. As in Noohi, the arbitration agreement at issue here essentially binds only Plaintiffs to arbitration, and thus lacks mutuality of consideration.

**CONCLUSION**

Based on the foregoing, Plaintiffs submit the TWC arbitration agreement contained within its Subscriber Agreement is unenforceable due to its illusory nature based upon TWC's unfettered right to amend or alter or cancel the agreement at any time without notice and due to lack of mutuality of consideration based upon TWC's admission it utilizes means outside of arbitration to resolve customer disputes. Therefore, Plaintiffs respectfully submit TWC's motion should be denied.

HOPKINS LAW FIRM, LLC

s/William E. Hopkins, Jr.
William E. Hopkins, Jr. (Fed. I.D. #6075)
12019 Ocean Highway
Post Office Box 1885
Pawleys Island, South Carolina 29585
(843) 314-9365


ORR, ELMORE & ERVIN, LLC

Kathy P. Elmore (Fed. I.D. #6593)
504 S. Coit Street
Post Office Box 2527
Florence, South Carolina 29503
(843) 667-6613


JANET, JENNER & SUGGS, LLC

Kenneth M. Suggs
Francis M. Hinson, IV
500 Taylor Street, Suite 301
Columbia, South Carolina 29201
(803) 726-0050

ATTORNEYS FOR THE PLAINTIFFS

July 8, 2013

Florence, South Carolina