**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| MARK T. COX AND RIDDICK S. RICHARDSON,<br><br>                                    *Plaintiffs*,<br><br>                 - against -<br><br>TIME WARNER CABLE INC.,<br><br>                                    *Defendant*. | Civil Action No.: 3:12-cv-03333-JFA |
| FRED W. ELMORE,<br><br>                                    *Plaintiff*,<br><br>                 - against -<br><br>TIME WARNER CABLE INC.,<br><br>                                    *Defendant*. | Civil Action No.: 4:12-cv-03407-JFA |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS AND
COMPEL ARBITRATION**

                                              Jonathan D. Thier (admitted *pro hac vice*)
                                              Philip V. Tisne (admitted *pro hac vice*)
                                              CAHILL GORDON & REINDEL LLP
                                              80 Pine Street
                                              New York, NY 10005

                                              Frank R. Ellerbe, III [699]
                                              Bonnie D. Shealy [6744]
                                              ROBINSON, MCFADDEN & MOORE, P.C.
                                              Post Office Box 944
                                              Columbia, SC  29202

                                              *Attorneys for Time Warner Cable Inc.*

TABLE OF CONTENTS

*page(s)*

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................... 1

ARGUMENT

1. *Plaintiffs' "illusoriness" argument must be resolved by the arbitrator.* ........................................................................................................... 2

2. *The arbitration clause is not illusory.* .................................................................. 5

3. *The arbitration clause is supported by consideration.* ........................................ 8

    (a) The Maryland rule does not apply in South Carolina. ................................. 8

    (b) The arbitration agreement is supported by consideration. ........................ 11

    (c) The Maryland rule is preempted by the FAA. ............................................ 13

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   *page(s)*

*Adkins* v. *Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) ..................................................................................5

*Adler* v. *Dell, Inc.*, No. 08 Civ. 13170, 2008 WL 5351042 (E.D. Mich.
  Dec. 18, 2008) ........................................................................................................4

*AT&T Mobility LLC* v. *Concepcion*,
  131 S. Ct. 1740 (2011) ..........................................................................................13

*Auto Mechanics Local 701 Welfare and Pension Funds* v. *Vanguard Car
  Rental USA, Inc.*, 502 F.3d 740 (7th Cir. 2007) ....................................................12

*Buckeye Check Cashing, Inc.* v. *Cardegna*,
  546 U.S. 440 (2006) ................................................................................................2

*Carey* v. *24 Hour Fitness, USA, Inc.*,
  669 F.3d 202 (5th Cir. 2012) ..................................................................................5

*Cheek* v. *United Healthcare of Mid–Atlantic, Inc.*,
  378 Md. 139, 835 A.2d 656 (2003) .........................................................................8

*Damato* v. *Time Warner Cable, Inc.*,
  No. 13 Civ. 00994 (ARR) (RML) (E.D.N.Y. July 31, 2013) ...............................3, 4

*Dan Ryan Builders, Inc.* v. *Nelson*,
  230 W. Va. 281, 737 S.E.2d 550 (2012) ...............................................................10

*Dan Ryan Builders, Inc.* v. *Nelson*,
  682 F.3d 327 (4th Cir. 2012) ................................................................................10

*In re Daufuskie Island Properties, LLC*,
  431 B.R. 657 (Bankr. D.S.C. 2010) ........................................................................9

*Federal Deposit Insurance Corp.* v. *Fagan*,
  459 F. Supp. 933 (D.S.C. 1978) ............................................................................13

*Furse* v. *Timber Acquisition*,
  303 S.C. 388, 401 S.E.2d 155 (1991) ................................................................9, 13

*Gadberry* v. *Rental Services Corp.*, No. CA 0:09-3327 (CMC) (PJG),
  2011 WL 766991 (D.S.C. Feb. 24, 2011) ...............................................................9

*Goldberg* v. *C.B. Richard Ellis, Inc.*, No. CA 4:11-cv-02237 (RBH), 2012
  WL 6522741 (D.S.C. Dec. 14, 2012) .................................................................3, 4

iii

*Hooters of America, Inc.* v. *Phillips*,
   173 F.3d 933 (4th Cir. 1999) ..........................................................................................6, 7

*Jeske* v. *Brooks*,
   875 F.2d 71 (4th Cir. 1989) ...........................................................................................3, 11

*Joyner* v. *GE Healthcare*, No. 4:08-2563 (TLW) (TER), 2009 WL
   3063040 (D.S.C. Sept. 18, 2009) .........................................................................................5

*Landers* v. *Federal Deposit Insurance Corp.*,
   402 S.C. 100, 739 S.E.2d 209 (2013) ..................................................................................9

*Muriithi* v. *Shuttle Express, Inc.*,
   712 F.3d 173 (4th Cir. 2013) ................................................................................................4

*Noohi* v. *Toll Brothers, Inc.*,
   708 F.3d 599 (4th Cir. 2013) .........................................................................................7, 13

*O'Neil* v. *Hilton Head Hospital*,
   115 F.3d 272 (4th Cir. 1997) ..............................................................................................13

*Poole* v. *Incentives Unlimited, Inc.*,
   345 S.C. 378, 548 S.E.2d 207 (2001) .............................................................................9, 10

*Prima Paint Corp.* v. *Flood & Conklin Manufacturing Co.*,
   388 U.S. 395 (1967).............................................................................................................2

*Rent-A-Center, West, Inc.* v. *Jackson*,
   130 S. Ct. 2772 (2010).........................................................................................................2

*Rental Uniform Services of Florence, Inc.* v. *Dudley*,
   278 S.C. 674, 301 S.E.2d 142 (1983) ..................................................................................9

*Senior Management, Inc.* v. *Capps*,
   240 F. App'x 550 (4th Cir. 2007)..................................................................................4, 8, 9

*Snowden* v. *CheckPoint Check Cashing*,
   290 F.3d 631 (4th Cir. 2002) ............................................................................................2, 4

*St. Paul Fire & Marine Insurance Co.* v. *Jacobson*,
   48 F.3d 778 (4th Cir. 1995) ................................................................................................10

*Sydnor v. Conseco Financial Servicing Corp.*,
   252 F.3d 302 (4th Cir. 2001) ............................................................................................3, 6

## Other Authorities

3 WILLISTON ON CONTRACTS § 7:7 (4th ed. 1990) .........................................................................8

RESTATEMENT (SECOND) OF CONTRACTS § 77 (1981) ........................................................................ 8

Defendant Time Warner Cable Inc. ("TWC") respectfully submits this reply memorandum in further support of its Motion To Dismiss the Complaints in favor of mandatory arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

## PRELIMINARY STATEMENT

Plaintiffs concede that each of them is bound by the terms of a contract with TWC, called a "Subscriber Agreement," that contains an arbitration clause which, if enforceable, requires Plaintiffs to submit this dispute to arbitration. Instead, Plaintiffs argue that the arbitration clause is unenforceable because (i) TWC's agreement to arbitrate is illusory and (ii) the arbitration clause is not supported by independent consideration. Neither argument will bear the weight of Plaintiffs' reliance.

*First*, Plaintiffs' "illusoriness" challenge is an issue properly reserved for the arbitrator. Plaintiffs rely on the Subscriber Agreement's change-of-terms clause to establish that TWC's agreement to arbitrate is illusory. But the change-of-terms clause applies generally to the entire Subscriber Agreement and, as such, Plaintiffs' challenge is not directed specifically to the arbitration clause. Under well-settled Supreme Court and Fourth Circuit law, such a challenge must be resolved in arbitration.

*Second*, TWC's agreement to arbitrate is not illusory. Under South Carolina law and the decisions Plaintiffs cite from other circuits, an arbitration agreement is not illusory, even if one party retains a unilateral right to amend it, so long as amendments cannot have retroactive effect. Because the Subscriber Agreement expressly prohibits retroactive modification, TWC's agreement to arbitrate is not illusory.

*Third*, the arbitration clause is fully supported by consideration. Plaintiffs rely on a Maryland rule of contract interpretation requiring that arbitration agreements be supported by independent consideration. But South Carolina does not apply that rule and, if it did, the rule would be preempted by the FAA. Even so, Plaintiffs' argument would fail under the Maryland rule be-

cause the arbitration clause is supported by independent consideration, *i.e.*, the parties' mutual obligation to submit disputes to arbitration at the demand of the other party.

In short, there is no basis to disregard the arbitration clause that Plaintiffs concede applies to this dispute, and this Court should compel arbitration.

## ARGUMENT

**1. Plaintiffs' "illusoriness" argument must be resolved by the arbitrator.**

Plaintiffs argue that TWC's agreement to arbitrate is illusory because TWC "retains the right to unilaterally amend or alter its arbitration agreement at any time." Pls' Br. at 3. Although we disagree with Plaintiffs' legal conclusion and the factual predicate upon which it is based, *see infra* Point 2, decisions from the Supreme Court and the Court of Appeals make clear that this argument must be resolved in arbitration.

The law is clear that parties who seek to avoid arbitration by challenging the enforceability of an arbitration provision must articulate grounds that "'relate specifically to the arbitration clause and not just to the contract as a whole.'" *Snowden* v. *CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (quoting *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)); *see Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). In its seminal decision on the issue, *Prima Paint Corp.* v. *Flood & Conklin Manufacturing Co.*, the Supreme Court left no doubt that if a defense "goes to the 'making' of the agreement to arbitrate" then "the federal court may proceed to adjudicate it," but that the FAA "does not permit the federal court to consider [challenges to] the contract generally."[1] 388 U.S. 395, 403-04 (1967); *see Rent-A-Center, West, Inc.* v. *Jackson*, 130 S.

---

[1] This doctrine does not apply if "the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden*, 290 F.3d at 637. Plaintiffs do not—and could not—advance such a challenge in this case. *See* Def's Br. at 3-4 (detailing Plaintiffs' assent to Subscriber Agreement and, specifically, its arbitration clause).

Ct. 2772, 2778 (2010). Consequently, judicial review is available solely for challenges that "would invalidate only the arbitration agreement, while leaving the contract as a whole intact." *Sydnor* v. *Conseco Financial Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001); *see Goldberg* v. *C.B. Richard Ellis, Inc.*, No. CA 4:11-cv-02237 (RBH), 2012 WL 6522741, at *4 (D.S.C. Dec. 14, 2012) (compelling arbitration under *Prima Paint* where plaintiff "did not specifically point to an error with the arbitration provision itself").

Here, Plaintiffs rely entirely on the Subscriber Agreement's change-of-terms clause in arguing that TWC's agreement to arbitrate is illusory. *See* Pls' Br. at 2-3. The change-of-terms clause is located in Section 8 of the Subscriber Agreement. It states that TWC "may change [its] Customer Agreements by amending the on-line version of the relevant document" and that a subscriber's continued use thereafter will constitute acceptance of the change. Dzujna Aff't Ex. A § 8(a)-(b). By its plain terms, the change-of-terms clause applies broadly to the entire Subscriber Agreement; it does not relate in any substantive way specifically to the arbitration clause (or any other clause) and ***does not even mention arbitration***. A challenge based on a generally-applicable contract provision like this is, in substance, an undifferentiated challenge to the contract as a whole and is subject to arbitration under *Prima Paint* and its progeny. *See Jeske* v. *Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) ("Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution.").

Indeed, one court facing precisely the same "illusoriness" argument, in an action challenging the same modem fee at issue here, has already so held. *See Damato* v. *Time Warner Cable, Inc.*, No. 13 Civ. 00994 (ARR) (RML), slip op. at 9-12 (E.D.N.Y. July 31, 2013). In *Damato*, TWC moved to compel arbitration based on the Subscriber Agreement. In opposing that motion, the plaintiffs argued that the Subscriber Agreement's arbitration clause is unenforceable because Section 8 of the Subscriber Agreement permits TWC to amend that agreement unilaterally. Surveying the same Supreme Court decisions discussed above, the district court concluded that

4

"[b]ecause this argument challenges the validity of the contract as a whole, and not specifically the arbitration agreement, the matter must be referred for resolution to the arbitrator." *Id.* at 12.

The Court of Appeals' recent decision in *Muriithi* v. *Shuttle Express, Inc.*, 712 F.3d 173 (4th Cir. 2013), further demonstrates that this is so. There, the plaintiff was a shuttle bus driver who sued his employer for wage violations under the Fair Labor Standards Act ("FLSA"). His employment contract (the "Franchise Agreement") contained an arbitration clause and a separate clause creating a one-year statute of limitations for claims related to the contract (the "limitations clause"). *See id.* at 177. When the employer moved to compel arbitration, the plaintiff employee argued that the limitations clause rendered the arbitration clause unconscionable. The district court agreed with the plaintiff and declined to compel arbitration, but the Court of Appeals reversed. *See id.* 183-84. It noted that the limitations clause "is not referenced in the Arbitration Clause, but is applicable generally to the Franchise Agreement" and that "the language of this provision does not overlap in any substantive manner with the language of the Arbitration Clause." *Id.* at 184. As a result, it was error for the court to address the plaintiff's challenge because it "does not rely on any aspect of the Arbitration Clause, but relates only to the general contract defense itself." *Id.*; *see also Snowden*, 290 F.3d at 636-38 (reserving for arbitrators argument that contract was void *ab initio* because it imposed usurious interest rate); *Senior Management, Inc.* v. *Capps*, 240 F. App'x 550, 553 (4th Cir. 2007) (per curiam) (fraud in the inducement challenge to entire contract must be resolved by arbitrators); *Goldberg*, 2012 WL 6522741 at *4 (holding that arbitrators must resolve argument that modification right contained in contract rendered arbitration agreement illusory); *Adler* v. *Dell, Inc.*, No. 08 Civ. 13170, 2008 WL 5351042, at *12 (E.D. Mich. Dec. 18, 2008) (holding that arbitrators must resolve argument that unilateral modification right contained in contract rendered arbitration agreement illusory).

The same is true here. Plaintiffs contend that TWC's agreement to arbitrate is rendered illusory by virtue of a separate, generally-applicable contract clause that does not relate to or mention the arbitration clause at all. Under "well settled" Fourth Circuit law, this challenge must be

resolved in arbitration.[2]

## 2. The arbitration clause is not illusory.

In any event, Plaintiffs' "illusoriness" challenge fails on the merits. South Carolina contract law governs this question, *see, e.g.*, *Adkins* v. *Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002), and provides that an agreement to arbitrate is not illusory, even if one party retains a unilateral right to amend it, so long as amendments cannot have retroactive effect. Such was the holding of *Joyner* v. *GE Healthcare*, No. 4:08-2563 (TLW) (TER), 2009 WL 3063040 (D.S.C. Sept. 18, 2009), where this Court declined to invalidate an arbitration clause simply because it permitted an employer unilaterally to amend its dispute resolution program, called "RESOLVE." Critical to the South Carolina law analysis in that case was the fact that the contract contained a provision that prohibited amendments from applying retroactively to then-pending arbitrations. *See id.* at *4. As a result, this Court held that "the provision that allows [the employer] to modify or discontinue the RESOLVE program does not make its agreement to arbitrate illusory." *Id.*

Although Plaintiffs have cited no South Carolina law on point, their extra-circuit citations apply the same rule. In *Carey* v. *24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012), the court invalidated an agreement as illusory that contained a change-of-terms provision permitting retroactive modification. Animating that conclusion was the concern that an "unfettered" ability to modify an arbitration agreement retroactively would permit one party to derail then-pending arbitrations. *See id.* at 206 ("If a 24 Hour Fitness employee sought to invoke arbitration with the company pursuant to the agreement, nothing would prevent 24 Hour Fitness from changing the agreement and making those changes applicable to that pending dispute if it determined that arbi-

---

[2] As we explain below, *see infra* Point 3(a), Plaintiffs' failure of consideration charge (Pls' Br. at 5-7), is also directed to the Subscriber Agreement generally. In short, Plaintiffs rely on Maryland law that limits the judicial inquiry into consideration to the four corners of an arbitration clause. But that law does not apply here and, consequently, Plaintiffs' consideration challenge reduces to whether the *entire* Subscriber Agreement is supported by consideration. If Plaintiff had argued that the Subscriber Agreement *as a whole* was not supported by consideration, that argument would properly be reserved for the arbitrator under *Prima Paint*. Yet Plaintiffs do not (and could not) advance such a contention and, for this reason, their consideration argument may be rejected by this Court.

tration was no longer in its interest.").

The concerns expressed in *Joyner* and *Carey* are addressed by the Subscriber Agreement's anti-retroactivity provision. Contained in Section 8(c), that provision states that "[a]ny changes to our Customer Agreements are intended to be prospective only" and that "the amended version of the relevant document only becomes binding on you as of the date that we make the change." Dzujna Aff't Ex. A § 8(c). The import of this clause is clear: **new or amended terms do not apply retroactively**. Plaintiffs are wrong to suggest that "TWC can effectively revoke its promise to arbitrate at any time thereafter, regardless of when or how the particular dispute with the customer arose." Pls' Br. at 4. If a dispute arises with a customer, TWC is prohibited from amending the Subscriber Agreement retroactively to eliminate arbitration with respect to that dispute. As a matter of South Carolina law (and the extra-circuit law Plaintiffs cite), TWC's agreement to arbitrate is not illusory.

Plaintiffs cite a pair of Fourth Circuit decisions for the proposition that "an employer's right to change the terms of an arbitration agreement in whole or in part without notice render[s] the agreement unenforceable." Pls' Br. at 4. But those decisions do not endorse any such broad rule and have no application here.

In the first, *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933 (4th Cir. 1999), an employee executed an arbitration agreement during the course of her employment that required she and her employer to submit disputes to arbitration. The agreement was silent as to the form of arbitration and permitted the employer to promulgate rules governing that subject. *See id.* at 935-36. The employer did so, but the Court of Appeals concluded that those rules were so one-sided and unfair as to breach the employer's agreement to arbitrate. *See id.* at 938-40; *see also Sydnor*, 252 F.3d at 306 (*Hooters* decision "was based on a multitude of biased and warped rules promulgated by Hooters which essentially created a 'sham arbitration system' which the court refused to enforce." (alteration omitted)). Given the breach, the court rescinded the arbitration agreement and refused to compel arbitration of the employee's dispute. *See Hooters*, 173 F.3d at 940.

7

Here, Plaintiffs do not contend that TWC breached the Subscriber Agreement by creating an unfair scheme of arbitration, let alone the type of pervasively unfair system presented in *Hooters*. Nor could they: the arbitration clause here expressly states that any arbitration shall be conducted pursuant to the comprehensive and well-regarded Commercial Arbitration Rules of the American Arbitration Association ("AAA"). *See* Dzujna Aff't Ex. A § 15(a). And the other terms of the arbitration clause are eminently reasonable: they (i) permit subscribers to opt out of the arbitration clause altogether *see id.* § 15(e), (ii) preserve a judicial forum for those who do not opt out, *see id.* § 15(a), and (iii) obligate TWC to advance a subscriber's arbitration costs without any claim to recover them if the subscriber prevails in arbitration, *see id.* § 15(d). The arbitration clause is manifestly fair and contains nothing resembling the systematic bias that the Court of Appeals found in *Hooters*. *See, e.g.*, 173 F.3d at 940 ("[T]he promulgation of so many biased rules—*especially the scheme whereby one party to the proceeding so controls the arbitral panel*—breaches the contract entered into by the parties." (emphasis added)). *Hooters* is inapplicable.

The second Fourth Circuit decision Plaintiffs cite, *Noohi* v. *Toll Brothers, Inc.*, 708 F.3d 599 (4th Cir. 2013), is equally inapplicable. In that case, the Court of Appeals applied Maryland law requiring courts to look only to the four corners of an arbitration clause in assessing whether the clause is supported by consideration. *See id.* at 607-09 (applying *Cheek* v. *United Healthcare of Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003)). Finding itself bound by that Maryland rule of contract interpretation, the court concluded that the arbitration clause at issue lacked mutuality of obligation (and thus was not supported by consideration) because, by its terms, the arbitration clause only applied to disputes initiated by the plaintiff, not to those initiated by the defendant. *See id.* at 610-11 ("The clause does not state 'Buyer and Seller,' or even 'the parties' and thus does not impose any obligations on the Defendants. It only refers to 'Buyers' and their obligations." (quoting district court)).

There can be no similar objection to the arbitration clause here, and Plaintiff advances

none: unlike the clause in *Noohi*, the arbitration clause here states in no uncertain terms that "each" of the parties agrees to submit its disputes to arbitration. *See* Dzujna Aff't Ex. A § 15(a) ("if we cannot resolve a Dispute with you, then . . . *each of us agrees* to submit the Dispute to the American Arbitration Association for resolution" (emphasis added)). The absence of mutual obligation identified in *Noohi* is not present here.

In sum, Plaintiffs' "illusoriness" argument should be resolved in arbitration under "well settled" Supreme Court and Fourth Circuit law. But even if this were not the case, the argument would still fail because TWC's agreement to arbitrate is not illusory as a matter of South Carolina law.[3]

### 3. The arbitration clause is supported by consideration.

Finally, Plaintiffs argue that the arbitration clause is not supported by consideration because it lacks mutuality of obligation. *See* Pls' Br. at 6-7. This is so, Plaintiffs contend, because TWC "uses or otherwise resorts to the judicial process and dispute resolution mechanisms outside of arbitration." *Id.* at 6. The argument fails for several reasons.

*(a)  The Maryland rule does not apply in South Carolina.*

There is no dispute that the Subscriber Agreement *as a whole* is supported by consideration. Rather, Plaintiffs contend that the arbitration provision itself must be supported by independent consideration, relying for that proposition on the Maryland Court of Appeals decision in *Cheek* v. *United Healthcare of Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003) (the "Mar-

---

[3] Plaintiffs' "illusoriness" argument is, in fact, an argument that the arbitration agreement lacks consideration. As Professor Williston has explained: "Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration." 3 WILLISTON ON CONTRACTS § 7:7 (4th ed. 1990); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 77 (1981) ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise."). But because South Carolina follows the general rule that no special consideration is required to support individual contract clauses, the arbitration clause here would be supported by consideration—even if TWC's agreement to arbitrate was illusory—because the Subscriber Agreement *as a whole* is supported by consideration. *See, e.g.*, *Senior Management*, 240 F. App'x at 553.

9

yland rule"). Although Plaintiffs acknowledge that no South Carolina court has ever endorsed the Maryland rule, they suggest "that South Carolina would follow Maryland law and require independent consideration within the arbitration provision itself." Pls' Br. at 5.

But no less than the Supreme Court of South Carolina has stated otherwise: under the general rule of contract law in South Carolina, "no special consideration need be singled out or apportioned for each separate provision in a contract, and a number of agreements covering more than one subject may be founded on one consideration." *Furse* v. *Timber Acquisition*, 303 S.C. 388, 390, 401 S.E.2d 155, 156 (1991) (citing 17 C.J.S. Contracts § 71 (1963)); *see also Gadberry* v. *Rental Services Corp.*, No. CA 0:09-3327 (CMC) (PJG), 2011 WL 766991, at *3 (D.S.C. Feb. 24, 2011) (finding consideration for entire contract sufficient to support arbitration clause); *In re Daufuskie Island Properties, LLC*, 431 B.R. 657, 675 (Bankr. D.S.C. 2010). Indeed, applying the law of North Carolina (which follows the same general rule), the Court of Appeals rejected an attempt to isolate the consideration analysis to an arbitration clause itself, concluding that "district court erred in holding the arbitration provisions were invalid" where contained in "agreements [that] as a whole were supported by adequate consideration." *Senior Management*, 240 F. App'x at 553.

Nevertheless, Plaintiffs suggest (Pl's Br. at 5-6) that South Carolina would adopt the Maryland rule based on the Supreme Court's decision in *Poole* v. *Incentives Unlimited, Inc.*, 345 S.C. 378, 548 S.E.2d 207 (2001). But that decision involved completely different issues, *i.e.*, whether a stand-alone restrictive covenant was supported by *any* consideration, *see id.* at 381-82, 548 S.E.2d at 209, not whether a restrictive covenant contained within a larger contract required *independent* consideration. In any event, it is unlikely that a rule developed in the context of restrictive covenants, which South Carolina public policy disfavors, *see, e.g.*, *Rental Uniform Services of Florence, Inc.* v. *Dudley*, 278 S.C. 674, 675, 301 S.E.2d 142, 143 (1983), would apply in the markedly different context of arbitration agreements, which South Carolina public policy strongly favors, *see, e.g.*, *Landers* v. *Federal Deposit Insurance Corp.*, 402 S.C. 100, 109, 739

10

S.E.2d 209, 213 (2013).  And there is no surer indication that *Poole* does not warrant application of the Maryland rule here than that North Carolina follows *Poole*, 345 S.C. at 381-82, 548 S.E.2d at 209, and does not follow the Maryland rule, *see Dan Ryan Builders, Inc.* v. *Nelson*, 682 F.3d 327, 330 (4th Cir. 2012).

Even if *Poole* could be characterized as supporting adoption of the Maryland rule, however, this Court should not create new state law absent "a clear and dominant articulation" of a state policy favoring its adoption.  *St. Paul Fire & Marine Insurance Co.* v. *Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995).  This was effectively the approach taken by the court in *Dan Ryan Builders*, where the plaintiff asked the Court of Appeals to adopt the Maryland rule as a matter of West Virginia law (which was silent on the issue).  *See* 682 F.3d at 329.  The court declined, noting that "at least one other state in this Circuit has established precedent contrary to the law in Maryland," *id.* at 330 (citing *Tillman* v. *Commercial Credit Loans, Inc.*, 177 N.C. App. 568, 629 S.E.2d 865, 874-75 (2006)), and concluding that "[t]hese conflicting views of the state appellate courts in Maryland and North Carolina illustrate the importance of certifying this issue to the Supreme Court of Appeals of West Virginia," *id.*  On certification, the Supreme Court of West Virginia refused to adopt the Maryland rule and instead adopted the approach taken by a "majority of courts," holding that "parties need not have separate consideration for the arbitration clause, or equivalent, reciprocal duties to arbitrate, so long as the underlying contract as a whole is supported by valuable consideration."  *Dan Ryan Builders, Inc.* v. *Nelson*, 230 W. Va. 281, 737 S.E.2d 550, 557 (2012).  This Court should be equally reluctant to create new South Carolina law under the circumstances.

In short, South Carolina law holds that consideration to support an entire contract is sufficient to support an arbitration clause contained in it.  Plaintiffs do not (and could not) argue that the Subscriber Agreement lacks consideration and, as a result, their consideration argument fails

11

as a matter of South Carolina law.[4]

      *(b)    The arbitration agreement is supported by consideration.*

Even if the Maryland rule was the law in South Carolina, Plaintiffs' consideration argument would fail on the merits. Plaintiffs argue that the arbitration clause lacks consideration because the parties are not mutually bound to submit disputes to arbitration. This is so, Plaintiffs contend, because subscribers "are completely bound to utilize or seek relief through arbitration" while TWC "uses or otherwise resorts to the judicial process and dispute resolution mechanisms outside of arbitration." Pls' Br. at 6. Thus, Plaintiffs argue that "[s]uch a lack of mutual obligations with regard to disputes cannot possibly constitute sufficient consideration to support an arbitration agreement." *Id.* at 7.

This is wrong as a matter of fact. It is not correct that subscribers have "an unfettered obligation to arbitrate all disputes of any kind and nature with TWC." *Id.* Subscribers are free to opt out of the arbitration clause altogether if they submit a timely notice, *see* Dzujna Aff't Ex. A § 15(e), and subscribers who do not opt out are permitted to bring their disputes in a "local 'small claims' court," *id.* § 15(a). Nor is it true that TWC "resorts to the judicial process" instead of arbitration, Pls' Br. at 6, or "obtains judgments against customers outside of the arbitration process," *id.* Plaintiffs cite Ms. Dzujna's deposition in support of this assertion, *see* Pls' Br. at 6-7, but—***as Plaintiffs' own quotation from that deposition makes clear***—Ms. Dzujna testified to nothing of the sort. She testified only that TWC "use[s] other means [than arbitration] to try to resolve disputes." The Supplemental Affidavit of Christine Dzujna makes clear that the "other means" to which she was referring were individual negotiations with TWC subscribers to resolve their complaints and/or concerns. *See* Dzujna Supp. Aff't ¶ 3. Indeed, that TWC ac-

---

[4] If Plaintiffs had argued that the Subscriber Agreement as a whole lacked consideration (as South Carolina law would require them to do), that argument should be resolved in arbitration under *Prima Paint* and the cases discussed above. *See supra* Point 1; *see also Jeske*, 875 F.2d at 75 (holding that arbitrators must resolve argument that entire contract lacks consideration).

commodates its subscribers in this manner without first resorting to arbitration is hardly surprising: the arbitration clause itself references pre-arbitration dispute resolution efforts when it states that TWC's "goal is to resolve Disputes fairly and quickly" and that arbitration will result thereafter "if we cannot resolve a Dispute with you." Dzujna Aff't Ex. A § 15(a). Ms. Dzujna simply did not testify that TWC has a practice of initiating litigation against its subscribers instead of submitting disputes to arbitration, and her Supplemental Affidavit clarifies that, in fact, TWC has not initiated a lawsuit against a subscriber at least since the current arbitration clause was included in the Subscriber Agreement in 2010.[5] *See* Dzujna Supp. Aff't ¶ 4.

Regardless, the initiation of litigation alone would not evidence a lack of mutual obligation.[6] The arbitration clause obligates each subscriber to submit his or her dispute to arbitration unless TWC waives its right to enforce the arbitration clause in that case, and *vice versa*. *Cf. Auto Mechanics Local 701 Welfare and Pension Funds* v. *Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 747 (7th Cir. 2007) (noting that "[l]ike many other contractual rights, a contractual right to arbitrate may be waived" and that "[a]s they may do with other contractual clauses, litigants may turn their back on their right to enforce an agreement to arbitrate"). Filing a lawsuit would not evidence an absence of mutual obligation; refusing to submit that dispute to arbitration when requested would. But that is not TWC's practice. *See* Dzujna Supp. Aff't ¶ 6. Because both parties are required to comply with a request to submit disputes for arbitration at the other party's election, there is no lack of mutual obligation. Indeed, as the Court of Appeals observed in making this very point, Plaintiffs' argument about the absence of mutual obligation "is espe-

---

[5] TWC occasionally employs the services of third-party debt collection companies to make efforts to recover delinquent debts owed to TWC, but neither TWC nor any third-party debt collector that TWC employs has initiated litigation to recover a debt owed to TWC by a subscriber who was a party to the Subscriber Agreement. *See* Dzujna Supp. Aff't ¶ 5.

[6] Plaintiffs also appear to suggest that termination rights undermine mutuality of obligation in the arbitration clause. *See* Pls' Br. at 6. But the right to terminate the contract—which is mutual—does not relate in any way to either party's obligation to submit a dispute to arbitration and, indeed, the arbitration clause itself makes clear that that obligation survives termination. *See* Dzujna Aff't Ex. A § 15(f) ("This arbitration clause will survive the termination of your Services . . . .").

cially misplaced in the circumstances of this case" because TWC has "consistently argued that it is bound by the arbitration agreement," while Plaintiffs are "the only party to this case who ha[ve] shown a desire to avoid binding arbitration."  *O'Neil* v. *Hilton Head Hospital*, 115 F.3d 272, 275 (4th Cir. 1997).

Thus, even if there were no other defects with Plaintiffs' consideration argument, it would still fail on the merits because the arbitration clause does not lack mutual obligation.

    *(c)*    *The Maryland rule is preempted by the FAA.*

The general rule of contracts in South Carolina is that "no special consideration need be singled out or apportioned for each separate provision in a contract, and a number of agreements covering more than one subject may be founded on one consideration."  *Furse*, 303 S.C. at 390, 401 S.E.2d at 156.  The Maryland rule, if it applied in South Carolina, would create an exception to this general rule by requiring an arbitration agreement contained in a larger contract to be supported by independent consideration.  Such a rule disfavors arbitration by holding agreements to arbitrate to a more rigorous standard than other contract provisions.  This is the kind of discriminatory rule that the Supreme Court has held is preempted by the FAA.  *See AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1746 (2011).[7]

---

[7] The Court of Appeals recently rejected this argument, *see Noohi*, 708 F.3d at 611-13, but it is respectfully submitted that *Noohi* was wrongly decided.  The relevant question is not whether the Maryland rule "treat[s] an arbitration provision like *any stand-alone contract*," *id.* at 612 (emphasis added), but whether it treats an arbitration provision like *any other contract provision*.  Because it does not, it should be preempted (if it applies here at all).  We acknowledge that this Court is bound by the holding of *Noohi*, *cf. Federal Deposit Insurance Corp.* v. *Fagan*, 459 F. Supp. 933, 935 (D.S.C. 1978) ("[T]his court is bound by the decisions of the Court of Appeals of this Circuit until such decisions are changed."), and advance this argument here to preserve it for appeal.

14

## CONCLUSION

For the reasons stated above and in TWC's opening brief, the Complaints should be dismissed or, alternatively, the actions should be stayed pending the arbitration of Plaintiffs' claims.

Dated this sixth day of August, 2013.

CAHILL GORDON & REINDEL LLP


/s/ Jonathan D. Thier
Jonathan D. Thier (admitted *pro hac vice*)
Philip V. Tisne (admitted *pro hac vice*)
80 Pine Street
New York, NY 10005
Telephone: (212) 701-3992
Fax: (212) 378-2374
jthier@cahill.com
ptisne@cahill.com

ROBINSON, MCFADDEN & MOORE, P.C.

Frank R. Ellerbe, III [699]
Bonnie D. Shealy [6744]

Post Office Box 944
Columbia, SC 29202
Telephone: (803) 779-8900
Fax: (803) 252-0724
fellerbe@robinsonlaw.com
bshealy@robinsonlaw.com

*Attorneys for Time Warner Cable Inc.*